991 A.2d 831

**Floyd Reynaldo NASH**

v.

**STATE of Maryland.**

No. 1619, Sept. Term, 2008.

Court of Special Appeals of Maryland.

March 26, 2010.

388

C. Todd M. Steuart, Upper Marlboro (David M. Simpson, on the brief, Greenbelt), for appellant.

Jeremy M. McCoy (Douglas F. Gansler, Atty. Gen., on the brief, Baltimore), for appellee.

Panel: MATRICCIANI, GRAEFF and STUART R. BERGER (Specially Assigned), JJ.

GRAEFF, J.

On August 12, 2008, Floyd Reynaldo Nash, appellant, was convicted in the Circuit Court for Charles County of possession of a regulated firearm by a person previously convicted of a crime of violence. The court sentenced appellant to five years without parole.

Appellant presents two questions on appeal, which we have rephrased:

1. Did the trial court err in bifurcating the elements of the offense, with the jury considering only whether appellant possessed a regulated firearm?

2. Was the evidence sufficient to support appellant's conviction?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 14, 2008, appellant was indicted in the Circuit Court for Charles County on three counts: (1) unlawful possession of a regulated firearm by a person previously convicted of a crime of violence; (2) possession of equipment to produce controlled dangerous substance; and (3) possession of marijuana. The State subsequently entered a *nolle prosequi* on the drug related charges, and it proceeded solely on the firearm charge.

At trial, Corporal Robert Kunhow, a member of the Charles County Sheriff's Office, testified that he executed a search and seizure warrant at 21 Chinaberry Lane on November 10, 2007, at approximately 5:20 a.m. This residence, located in a townhouse community in Charles County, was owned by appellant's wife, LaDonna Nash. Ms. Nash was the only person present in the residence at the time of the search.

During the search, Corporal Kunhow recovered a .45 caliber Hi–Point handgun from a nightstand drawer next to the bed in the master bedroom. The gun was loaded, with seven rounds in the magazine and one in the chamber. Corporal Kunhow "immediately made the gun safe" by dropping the magazine out of the handgun and opening the chamber to release the bullet. He testified that the gun "performed just like an operating handgun would." Corporal Kunhow, who had "been using handguns for about 13 years," testified that the gun was operating "fine."

In the drawer where the gun was found, Corporal Kunhow observed appellant's checkbook, as well as mail addressed to appellant. On top of a dresser in the same room, Corporal Kunhow found appellant's passport. He also located mail addressed to appellant on the kitchen table.

On February 13, 2008, the police executed a second search warrant for the home.[1] Patrol officers stopped appellant for a traffic violation, and Corporal Kunhow escorted appellant back to the residence.[2] Appellant gave Corporal Kunhow a key to the residence to avoid damage to the property, and the police searched the residence.

Corporal Kunhow advised appellant of his *Miranda* rights,[3] and he asked appellant questions about the gun that the police recovered in the residence on November 10, 2007. Corporal Kunhow asked appellant if he knew who owned the gun, explaining that they were having problems locating the registered owner of the handgun. Corporal Kunhow testified regarding the conversation that ensued as follows:

[Corporal Kunhow]: His response was he thought the gun was new and he didn't know that it had any registered owner.

[Prosecutor]: Okay. After he indicated that to you, what was the next thing you talked with him about with respect to the gun?

---

**1.** The record indicates that this search warrant related to the drug charges that were *nol prossed.*

**2.** Corporal Kunhow explained why they stopped appellant in his vehicle, as opposed to going directly to the residence to execute the second search warrant:

We were trying to be as, because we knew his wife was pregnant at the time, we didn't want to hit the house with a no knock warrant, so we were trying to take him off on a traffic stop so we wouldn't have to hit the house, cause any further problems or scare his wife or anything like that. So therefore, we waited outside waiting for him to leave so we could stop him on a traffic stop.

No issue is raised on appeal regarding this procedure.

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[Corporal Kunhow]: I asked him if he knew that he was not supposed to be in possession of a handgun, at which—

[Prosecutor]: And what did he say?

[Corporal Kunhow]: At which time he replied that he knew that he wasn't supposed to be, that he was trying to get the handgun registered under his wife's name, that they just wanted the handgun in the house for protection.

After Corporal Kunhow's testimony, the State discussed a stipulation that the parties had entered into regarding appellant's prior conviction of a crime of violence as an element of the charge of possession of a regulated firearm by a person convicted of a crime of violence. The substance of this stipulation is disputed by the parties and will be discussed in more detail, *infra*. Both parties agree, however, that pursuant to the stipulation, the only issue that would be submitted to the jury to decide was whether appellant was in possession of the gun.

The court then asked defense counsel if he had any motions. Counsel moved for judgment of acquittal "generally" and "on the grounds that [the] State has failed to show that this was a fireable weapon." He argued that the State had to have the gun "tested to determine whether it is actually a fireable weapon," and there was no evidence that the gun in this case had been tested. In response, the State argued that Corporal Kunhow had 13 years experience with guns and provided uncontroverted testimony that this was an operable weapon. The court denied appellant's motion.

Appellant called three witnesses on his behalf. Rhonda Graves, appellant's mother, testified that appellant and Ms. Nash were married in July 2007, but they separated in early October 2007. During the separation, appellant moved in with Ms. Graves. Ms. Graves became concerned for the safety of her daughter-in-law because she was living by herself in the Chinaberry Lane residence, which Ms. Graves believed to be an unsafe neighborhood. To protect Ms. Nash, Ms. Graves took her handgun to the Chinaberry Lane residence. She

testified that appellant and Ms. Nash reunited in December 2007.

Judy Graves,[4] appellant's neighbor, testified that she typically saw appellant four or five days during the week while walking her dog. There came a time when she did not see appellant as frequently. She testified that she saw appellant at the residence on Thanksgiving in 2007.

Darren Wallace, appellant's cousin, testified that he helped appellant move his personal items from the Chinaberry Lane residence to appellant's mother's house. Mr. Wallace then helped move appellant back to Chinaberry Lane in December 2007.

After appellant rested his case, the State called Corporal Kunhow in rebuttal. He testified that, when they executed the search warrants, there was a dog, a pit bull, at the residence.

At the conclusion of the case, appellant renewed his motion for judgment of acquittal on the ground that there was no evidence presented that the weapon was test-fired. The court denied the motion.

The court then instructed the jury. Of particular relevance to this appeal, the court stated as follows:

> Now, if you look at your verdict sheet, there's one question that you're asked. And the charge here is possession of a firearm under certain circumstances. As a matter of law, I am the one that determines what the "certain circumstances" are. The only issue that you're faced with is whether or not the defendant possessed a firearm. And that must be proven to you by the State beyond a reasonable doubt. A handgun is a regulated firearm.

There was no objection to this instruction.

The verdict sheet submitted to the jury provided:

1. Possession of a firearm under certain circumstances

---

4. Judy Graves is not related to appellant's mother, Rhonda Graves.

____ Not Guilty ____ Guilty

The jury found appellant guilty.

After the jury returned its verdict, the court referred to the stipulation, stating "we'll stipulate he was a convicted felon, right?" The State responded in the affirmative and introduced into evidence docket entries showing two prior convictions for robbery.

This timely appeal followed.

## DISCUSSION

### I.

Appellant was charged with unlawful possession of a firearm pursuant to Md.Code (2003), § 5–133(c) of the Public Safety Article ("P.S."). Section 5–133(c) provides, in pertinent part, as follows:

(1) A person may not possess a regulated firearm if the person was previously convicted of:

(i) a crime of violence. . . .

Pursuant to this statute, the State must prove three things: (1) possession; (2) of a regulated firearm; and (3) a prior conviction of a crime of violence.

Appellant's first contention addresses the third element. Specifically, appellant takes issue with the propriety of a stipulation entered into by the parties regarding the requirement that the State prove a prior crime of violence. Appellant contends that "[t]he State and defense, apparently, entered into a stipulation in chambers that the court would be [the] designated fact-finder on the issue of [a prior] felony conviction and that the jury would be limited to the issue of possession." Appellant argues that a judge should not assume the role of fact finder in a jury trial, and, in any event, "no credible evidence was produced by the State" during the trial to support the court's fact finding.

The State has several responses to appellant's argument. Initially, it disputes appellant's characterization of the stipula-

tion, arguing that the stipulation was not that the court would be the fact finder on the prior conviction element, but rather, that appellant had the requisite prior conviction of a crime of violence. Moreover, it argues that, because appellant agreed to the procedure below, he cannot assert error on appeal. On the merits, the State contends that there was no error, much less prejudicial error. The State argues that appellant "enjoyed an unnecessary windfall from the trial court's agreement to not mention even the existence of his prior conviction to the jury."

We will address first the dispute regarding the substance of the stipulation of the parties. The record is clear that the parties entered into some agreement regarding the third element of the offense that would prevent disclosure of the details of the previous conviction to the jury. Prior to voir dire, defense counsel stated: "Your Honor, with voir dire, my voir dire needs to . . . be changed by striking out the information about the type of the crime that was previously involved." The court complied, advising the prospective jurors: "The sole charge in this case is possession of a firearm under certain circumstances allegedly occurring November 10, 2007 in Waldorf, Maryland."

At the close of the State's case, the stipulation was discussed as follows:

[PROSECUTOR]: Well, before we get to [motions], I don't know if we had placed this part on the record, so I just wanted to make sure it was placed on the record.

THE COURT: Okay.

[PROSECUTOR]: That it's the State's understanding that the defense is gonna permit Your Honor to make the ruling on whether or not he is actually a felon, that would be not permitted to have the handgun and that the jury was only going to be deciding the issue of possession. In light of that, the State has presented a case before the jury that did not include any evidence with respect to his prior convictions that would support a felon [in] possession, illegal possession of a handgun.

THE COURT: Well, I think that was a stipulation the parties mentioned to me in chambers.

[DEFENSE COUNSEL]: That's correct Your Honor.

[PROSECUTOR]: I just wanted, I don't think it was on the record.

THE COURT: The only issue for them is possession.

[PROSECUTOR]: Correct.

THE COURT: And I give them an instruction saying, its up [to] the court to determine certain circumstances, you determine the possession.

[PROSECUTOR]: Correct.

THE COURT: Okay. With that, you rest, right?

[PROSECUTOR]: Yes. As long as everything is in. Yeah, I rest. I think I have everything in.

During jury instructions, the court instructed the jury that the charge was "possession of a firearm under certain circumstances." The court indicated that the jury would be deciding only the issue of possession of the firearm, and the court would determine "what the 'certain circumstances' are." Appellant made no objection to this instruction, and defense counsel agreed that he was "satisfied" with the court's instructions.

Based on the above, the appellant's contention that the parties stipulated that the court would be the fact finder on this element of the offense appears to be correct. The prosecutor characterized the stipulation as "the defense is gonna permit Your Honor to make the ruling on whether or not he is actually a felon, [who] would [not be] permitted to have the handgun," and the court instructed the jury that it would determine the issue of "certain circumstances."

The State, however, points to the following colloquy after the jury found appellant guilty of "possession of a firearm under certain circumstances":

[PROSECUTOR]: And Your Honor, for purposes of the record, I didn't know if, does the Court have to make your finding based on the stipulation for purposes of the record?

THE COURT: Well, **based on the stipulation, as I said, the disqualifying event, we'll stipulate he was a convicted felon, right?**

[PROSECUTOR]: Correct. Did the Court want me to put on the record what those were, for purposes of the record.

\* \* \*

THE COURT: Why don't you just put them in the record. Call them Court Exhibit if you want to.

[PROSECUTOR]: Okay. Your Honor, that would be CT990138A and I guess, I'll give CT990137A to Madam Clerk and, for exhibits, I guess 1 and 2. For purposes of supporting the prior convictions.

(Emphasis added).[5] This colloquy supports the State's argument that the parties stipulated to the fact of a qualifying conviction, rather than stipulating that the court would determine that element of the charge.

Thus, there is support for each party's position regarding the substance of the stipulation. This case illustrates why it is important for the parties, when they enter into a stipulation, to put the stipulation on the record, stating the terms clearly and succinctly.

In this case, however, we need not resolve the dispute regarding the substance of the stipulation. Under either scenario, the procedure was improper.

In *Carter v. State*, 374 Md. 693, 824 A.2d 123 (2003), the Court of Appeals set forth the proper procedure to follow when a defendant is charged with the crime of possession of a regulated firearm by a person with a prior conviction of a crime of violence. The Court explained how to balance the need for evidence of the prior conviction with the potential

---

**5.** The docket entries introduced by the State show that appellant had two prior convictions for robbery. Pursuant to Md.Code (2003), § 5–101(c)(13) of the Public Safety Article ("P.S."), robbery is a crime of violence that would make it illegal for appellant to possess a regulated firearm pursuant to P.S. § 5–133(c)(1)(i).

prejudicial effect of this evidence coming in front of the jury. *Id.* at 716–18, 824 A.2d 123.

In *Carter,* the defendant requested that the trial court bifurcate the elements of the criminal in possession charge, with the jury making a finding only as to whether the defendant had possessed a firearm. *Id.* at 701, 706, 824 A.2d 123. The trial court denied that request, and the Court of Appeals upheld that ruling. *Id.* at 701, 704, 824 A.2d 123. The Court held that "the proper course is to require a trial judge, when the defendant elects a jury trial, to allow the State to present evidence of all elements of a criminal-in-possession charge." *Id.* at 715, 824 A.2d 123.

The State argues that this language, providing that the court should *allow* the State to present evidence of the prior conviction element, does not *require* the State to submit this evidence to a jury. We disagree.

In *Carter,* the Court of Appeals noted that, although a few courts "have held that a trial court, at its discretion, may allow bifurcation of the proof of the elements of a criminal in possession charge," *id.* at 712–13, 824 A.2d 123, "[m]any courts have concluded that a trial judge does **not possess authority** to bifurcate a defendant's charge to prevent the jury from considering an element of that charge." *Id.* at 710, 824 A.2d 123 (emphasis added). The Court cited with approval the decision in *United States v. Gilliam,* 994 F.2d 97 (2d Cir.), *cert. denied,* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993), which set forth the Second Circuit's rationale for rejecting that procedure:

> [It] violates the very foundation of the jury system. It removes from the jury's consideration an element of the crime, leaving the jury in a position only to make findings of fact on a particular element without knowing the true import of those findings. Again, Gilliam is not charged with mere possession of a weapon, but with possession by a convicted felon. The jury speaks for the community in

condemning such behavior, and it cannot condemn such behavior if it is unaware of the nature of the crime charged. *Id.* (quoting *Gilliam,* 994 F.2d at 100–101).

After discussing cases from other jurisdictions, the Court of Appeals stated:

> [T]he proper approach is that which encourages the entirety of the charge to be heard by the jury. We are most persuaded by the predominant reasoning of the courts in [*United States v. Collamore,* 868 F.2d 24 (1st Cir.1989) *overruled on other grounds,* 21 F.3d 1 (1st Cir.1994)] and *Gilliam.* The jury's role in deciding guilt or innocence involves more than merely finding innocuous facts; rather, it requires a judgment about an individual's behavior based on an established code. This determination cannot be reached reliably without a full appreciation of the criminality of one's behavior. The jurors must know, therefore, why they are being asked to subject an individual to criminal punishment for possessing a firearm when, generally, such an act is not illegal. When the jury does not understand that the defendant may not possess a firearm because of a previous criminal conviction, its ability to carry out its role is impeded.

*Carter,* 374 Md. at 713–14, 824 A.2d 123. This discussion makes clear that bifurcating the elements of the offense, i.e., having the jury consider solely the issue of possession of the firearm, with the issue of the prior conviction to be determined at a later time, will not be sanctioned.[6]

Thus, to the extent that the stipulation was as appellant contends, that the jury would decide the possession issue and the judge would decide the "certain circumstances," *i.e.,* the

---

**6.** In *Galloway v. State,* 371 Md. 379, 396, 809 A.2d 653 (2002), the Court of Appeals declined to address whether a court had discretion to sever charges and proceed with a "hybrid jury/bench trial," allowing the court to decide the charge of possession of a firearm by a person previously convicted of a crime and the jury to decide the other charges. This case, by contrast, similar to *Carter v. State,* 374 Md. 693, 824 A.2d 123 (2003), involves a bifurcation of the elements of one offense.

prior conviction element, this procedure was improper. The Court in *Carter* clearly rejected a procedure bifurcating the prior conviction element from the other elements in a charge pursuant to P.S. § 5–133(c).

Even if the stipulation was as the State contends, a stipulation to the fact of the prior conviction, the procedure employed did not comply with that sanctioned in *Carter*. In that case, after the trial court rejected the defense request to bifurcate the elements of the offense, the defense offered to stipulate to the previous conviction element of the offense. *Id.* at 702, 824 A.2d 123. The State, however, refused to stipulate, and the court allowed the State to introduce evidence that Carter previously had pled guilty to the charge of robbery with a deadly weapon. *Id.*

The Court of Appeals reversed, noting that in a felon in possession of a firearm case, where a defendant offers " 'to admit that the prior-conviction element was satisfied,' " that is " 'conclusive evidence of that element,' " and "the name of the prior offense 'addresse[s] no detail in the definition of the prior-conviction element that would not have been covered by the stipulation or admission.' " *Id.* at 717, 824 A.2d 123 (quoting *Old Chief v. United States*, 519 U.S. 172, 186, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)). The Court held:

> [W]hen the defendant admits or the parties stipulate to the previous-conviction element of a charge under [P.S. § 5–133(c) ], the trial judge should inform the jury that the defendant admits that he or she has been convicted of a crime for which he or she is prohibited from possessing a regulated firearm under the law. The judge should not describe the previous conviction with any more particularity or by using the categories of crimes under [P.S. §§ 5–133(b), (c) ] (such as "crime of violence" or "felony").

*Carter*, 374 Md. at 722, 824 A.2d 123.

The procedure set forth in *Carter* was not followed here. To the extent that the stipulation was as the State argues, that appellant had a prior conviction of a crime of violence, the trial

court did not advise the jury that appellant admitted this element of the offense.

The State contends, however, that the court in *Carter* "did not mandate that the jury must be told of a prior conviction when the parties stipulate to the fact of the prior disqualifying conviction." Rather, it asserts that the Court's concern in *Carter* was in limiting "the type of information regarding a disqualifying conviction that may be shared with a jury."

■ To be sure, the portion of the Court's opinion to which the State refers did address limiting the admission of details of the prior conviction if the defendant agreed to stipulate to the disqualifying conviction to minimize potential prejudice. As indicated, however, the earlier part of the opinion made clear that the jury needed to know the context in which a defendant was being charged with possession of a firearm. We think that reasoning guided the Court's holding that, when a defendant stipulates to the prior conviction element of the offense, the judge "should inform the jury that the defendant admits that he or she has been convicted of a crime for which he or she is prohibited from possessing a regulated firearm under the law." *Id.* at 722, 824 A.2d 123.

Here, the jury was not advised that appellant was charged with possession of a firearm due to his prior conviction of a crime that prohibited him from possessing a firearm. No evidence or stipulation regarding the prior conviction was presented to the jury. Thus, whether the stipulation was that the court would determine the prior conviction element or that the parties stipulated to the fact of the prior conviction, the trial proceeded as a bifurcated trial, with the jury considering only the issue of possession.

The Court of Appeals' conclusion in *Carter*, that a bifurcation of the elements of the offense was improper, was in the context of the State objecting to bifurcation. *Id.* 374 Md. at 699–701, 824 A.2d 123. Here, however, the parties agreed that the jury would decide only the issue of possession, and the court proceeded in that manner. The parties have not cited, and we have not found, any case in this procedural

posture.[7] We did find, however, one case discussing the propriety of such an agreement.

In *United States v. Fennell,* 53 F.3d 1296, 1298 (D.C.Cir. 1995), *revised on other grounds,* 77 F.3d 510 (1996), the defendant was charged with, among other things, possession of a firearm while under a separate felony indictment. The parties agreed to stipulate that the defendant was the subject of a separate felony indictment at the time of the alleged possession of the firearm. *Id.* at 1301. On appeal, the defendant argued that the parties also agreed not to mention the stipulation to the jury, but that the trial court and prosecutor subsequently mentioned it. *Id.* In rejecting this claim, the United States Court of Appeals for the District of Columbia Circuit found, not only that the record was ambiguous regarding the scope of the agreement, but that "an agreement not to mention the indictment would have been improper" because "[t]he jury must always be informed of the full nature, including each element, of the charged crime." *Id.* at 1302 (citing *Gilliam,* 994 F.2d at 101). The Court held that, unless the parties had agreed to try that count in a bench trial, the court was "obligated to inform the jury of the stipulation about the prior indictment." *Id.*

We agree with this analysis. Accordingly, we hold that bifurcation of the elements of the offense of possession of a regulated firearm by a person previously convicted of a crime of violence is improper, even if agreed to by the parties. The court here erred in proceeding in this fashion.

That is not the end of the inquiry, however. The additional question we must address is whether appellant is entitled to reversal of his conviction based on a procedure to which he stipulated and agreed. We find that he is not entitled to such a windfall. A defendant should not be able to

---

**7.** The reasons for the paucity of cases with these facts most likely include: (1) that the State is unlikely in most cases to proceed in this manner; and (2) when the State agrees to this procedure, the defendant is unlikely to complain on appeal. We will discuss the impact of appellant's agreement to this procedure, *infra.*

take advantage of an error that he invited or requested the trial court to make. *See Klauenberg v. State,* 355 Md. 528, 544, 735 A.2d 1061 (1999) ("defendant who himself invites or creates error cannot obtain a benefit," such as reversal, from that error) (quoting *Allen v. State,* 89 Md.App. 25, 43, 597 A.2d 489 (1991)); *Murdock v. State,* 175 Md.App. 267, 294 n. 8, 927 A.2d 53 (same), *cert. denied,* 402 Md. 354, 936 A.2d 851 (2007). *Accord In re Jeannette L.,* 71 Md.App. 70, 81, 523 A.2d 1048 ("It is with ill grace that [appellants] now complain they should not have gotten that for which they asked."), *cert. denied,* 310 Md. 491, 530 A.2d 273 (1987).

In this Court's opinion in *Carter v. State,* 145 Md.App. 195, 212–13, 802 A.2d 460 (2002), Judge Adkins summarized an Ohio case reaching a similar conclusion:

In *Ohio v. Nievas,* 121 Ohio App.3d 451, 700 N.E.2d 339 (Ohio Ct.App.), *appeal dismissed,* 79 Ohio St.3d 1505, 684 N.E.2d 89 (Ohio 1997), the defendant had moved to bifurcate the issues before trial so that his prior conviction would be tried to the court rather than the jury. The court granted the motion and permitted the defendant to stipulate to the existence of the prior conviction outside the presence of the jury. *See Nievas,* 121 Ohio App.3d 451, 700 N.E.2d 339 at 343. On appeal, the defendant contended that he was deprived of his right to a jury trial because an essential element of his case had been tried to the bench without a valid jury trial waiver. In this case, however, the appellate court rejected the defendant's contention, stating that "while it may have been error for the trial court to bifurcate proof of [the defendant's] prior conviction from the remainder of the elements of the charged offenses, it was [the defendant] who requested the bifurcation[.]" *Nievas,* 121 Ohio App.3d 451, 700 N.E.2d 339 at 343. "Under the invited-error doctrine," it reasoned, "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Id.*

That reasoning applies to this case. Here, counsel clearly participated in the request to submit evidence of his prior convictions after the jury decided the issue of possession.

Prior to voir dire, defense counsel asked the court to strike out any reference to "the type of the crime that was previously involved." At the close of the case, when the prosecution placed on the record that the parties had entered into a stipulation that the jury would decide only the issue of possession, defense counsel agreed that was the stipulation. And defense counsel raised no objection to the court's instruction to the jury that it would decide only the issue of possession. Thus, it is clear that defense counsel, along with the State, requested that the court proceed as it did. Under these circumstances, and where there is no dispute that appellant had the requisite prior convictions, the invited error doctrine precludes appellant from taking advantage of this error. Appellant is not entitled to reversal of his conviction on this ground.

## II.

### Sufficiency of Evidence

▆ Appellant argues next that the evidence was insufficient to sustain his conviction. He asserts that the evidence was insufficient in two ways: (1) "[t]he State failed to present any evidence to the jury, directly or by way of a stipulation, that the recovered handgun, a .45 caliber Hi–Point handgun, was a regulated firearm"; and (2) "the State failed to present any evidence to the jury, directly or by way of stipulation that the [appellant] was in possession of said regulated firearm after a statutorily designated conviction."

The State counters that appellant's challenge to the sufficiency of the evidence is unpreserved for our review. It further argues that, even if the issue is preserved, the evidence was sufficient to sustain appellant's conviction.

We will address first the State's preservation argument. We have explained that, to preserve a claim that the evidence is insufficient to support a conviction, a defendant in a criminal trial must move for judgment of acquittal and "state *with particularity*" why the evidence was insufficient. *Sparkman v. State,* 184 Md.App. 716, 739, 968 A.2d 162 (citation and

quotations omitted), *cert. denied,* 410 Md. 166, 978 A.2d 246 (2009). *Accord Starr v. State,* 405 Md. 293, 303, 951 A.2d 87 (2008). As Judge Moylan explained for this Court:

> In a jury trial, the only way to raise and to preserve for appellate review the issue of the legal sufficiency of the evidence is to move for a judgment of acquittal on that ground. Under Md. Rule 4–324(a), a defendant is further required to argue precisely the ways in which the evidence should be found wanting and the particular elements of the crime as to which the evidence is deficient.

*Fraidin v. State,* 85 Md.App. 231, 244–45, 583 A.2d 1065, *cert. denied,* 322 Md. 614, 589 A.2d 57 (1991).

In this case, appellant made a motion for judgment of acquittal at the close of the State's case, moving for judgment of acquittal "generally" and on the grounds that the State had "failed to show that this was a fireable weapon." At the close of all the evidence, defense counsel renewed the motion "[f]or the grounds previously stated," reiterating that there was no evidence in the record that the weapon had been test-fired. At no time did appellant's counsel raise the arguments he now asserts on appeal. Accordingly, appellant did not preserve these arguments for appellate review. *See Anthony v. State,* 117 Md.App. 119, 126, 699 A.2d 505 ("The issue of sufficiency of the evidence is not preserved when appellant's motion for judgment of acquittal is on a ground different than that set forth on appeal."), *cert. denied,* 348 Md. 205, 703 A.2d 147 (1997).[8]

Even if preserved, we would find appellant's claim to be without merit. When reviewing the sufficiency of the evidence, we must determine, after viewing the evidence in the

---

8. Although appellant did not raise on appeal the issue he raised below regarding the operability of the firearm, we note that the State is not required to demonstrate that a firearm is operable to obtain a conviction under P.S. § 5–133(c). *See Hicks v. State,* 189 Md.App. 112, 139, 984 A.2d 246 (2009) ("in order to obtain a conviction under Pub. Safety § 5–133, the State need not prove that the firearm in question was operable").

light most favorable to the State, if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Burlas v. State,* 185 Md.App. 559, 568, 971 A.2d 937 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), *cert. denied* 410 Md. 166, 978 A.2d 245 (2009). If the evidence " 'showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt,' then we will affirm the conviction." *Bible v. State,* 411 Md. 138, 156, 982 A.2d 348 (2009) (quoting *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998)). The evidence here clearly met this test.

 Appellant first contends that the State did not introduce evidence that the recovered handgun constituted a regulated firearm. This contention is without merit. The trial court instructed the jury, pursuant to P.S. § 5–101(p)(1), that a handgun is a regulated firearm.[9] The undisputed testimony from Corporal Kunhow was that the gun he recovered from the nightstand drawer was a handgun. Accordingly, there was sufficient evidence for the jury to find that the recovered gun constituted a regulated firearm.

 Appellant next contends that the State "failed to present evidence to the jury, directly or by way of a stipulation" that he was convicted of a previous crime of violence that made it illegal for him to possess a regulated firearm. The State argues that the record clearly reflects that appellant had two prior robbery convictions. Pursuant to the stipulation of the parties, certified copies of docket entries reflecting these convictions were admitted into evidence. Although, as previously indicated, a stipulation or other evidence of the prior convictions should have been submitted to the jury, appellant agreed to the procedure followed by the trial court, and it is

---

**9.** The statute reads:

 (p) *Regulated firearm.*—"Regulated firearm" means:
 (1) a handgun. . . .

disingenuous for him now to assert error in a procedure that he requested at trial. Thus, even if preserved, we would not grant appellant a new trial on this ground.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**