REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2554

September Term, 2013

_____

NATHANIEL SMITH, SR.

v.

STATE OF MARYLAND

_____

Woodward,
Kehoe,
Arthur,

JJ.

_____

Opinion by Kehoe, J.

_____

Filed: November 25, 2015

Nathaniel Smith, Sr. shot an erstwhile friend in the head during an argument. A jury of the Circuit Court for Prince George's County convicted him of first degree assault and related crimes, including, and of interest to us for the purposes of this appeal, illegally possessing a firearm after a disqualifying conviction.

Mr. Smith raises two issues. First, he argues that there was insufficient evidence to sustain the convictions for illegal possession of a firearm because the prosecutor failed to present evidence of the disqualifying conviction to the jury during the State's case-in-chief. We do not agree. Second, he asks us to undertake plain error review to decide whether his complaint of prosecutorial misconduct during closing argument warrants reversal. This is not an appropriate case for plain error review. We will affirm the convictions.

**Background**

This appeal arises out of a dispute between Smith and a friend, Herbert Mungo, over a credit card reader. Their disagreement degenerated into an altercation during which Smith shot Mr. Mungo. Smith was charged with attempted second degree murder, first degree assault, use of a handgun in the commission of a crime of violence, and possession of cocaine. Additionally, he was charged with violating Public Safety Article ("PS") § 5-133(b)[1]—illegal possession of a regulated firearm after having been convicted of a

---

[1]Section 5-133(b) provides in pertinent part:
(b) Subject to § 5-133.3 of this subtitle, a person may not possess a regulated firearm if the person:
(1) has been convicted of a disqualifying crime;

(continued...)

disqualifying crime (Count 5); PS § 5-133(c)[2]—illegal possession of a regulated firearm after a felony conviction for violating Criminal Law Article (CL) § 5-602[3] (Count 6); and PS § 5-144[4]—possession of a firearm in violation of Subtitle 5 of the Public Safety Article (Count 7).

---

[1](...continued)
(2) has been convicted of a violation classified as a common law crime and received a term of imprisonment of more than 2 years[.]

****

[2]PS § 5-133(c) states in pertinent part:

(c)(1) A person may not possess a regulated firearm if the person was previously convicted of:

(i) a crime of violence;

(ii) a violation of § 5-602, § 5-603, § 5-604, § 5-605, § 5-612, § 5-613, or § 5-614 of the Criminal Law Article; or

(iii) an offense under the laws of another state or the United States that would constitute one of the crimes listed in item (i) or (ii) of this paragraph if committed in this State.

****

[3]CL § 5-602 states:

Except as otherwise provided in this title, a person may not:

(1) distribute or dispense a controlled dangerous substance; or

(2) possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance.

[4]The charging document refers to PS § 5-143. That section has been renumbered as § 5-144. It reads in pertinent part:

(a) Except as otherwise provided in this subtitle, a dealer or other person may not:

(1) knowingly participate in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subtitle[.]

2

The jury acquitted Smith of the attempted murder charge, but found him guilty on the remaining counts. At sentencing, the trial court merged the convictions for violating PS § 5-133(b) and PS § 5-144 with the conviction for violating PS § 5-133(c) and imposed a sentence of five years' incarceration, to run concurrently with a sentence of twenty-five years' incarceration for the first-degree assault conviction.[5] This appeal followed.

## Analysis

### 1. The Sufficiency of the Evidence

### 1.1. Standards of Review

Normally, when reviewing a challenge to the sufficiency of the evidence to sustain a conviction, we decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Derr v. State*, 434 Md. 88, 129 (2013), *cert. denied*, 134 S. Ct. 2723 (2014) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*)).

Smith's sufficiency challenge, however, calls other principles into play. His attack upon the legal adequacy of the evidence supporting the firearms possession convictions is limited to his assertion that the State failed to present evidence of a disqualifying conviction in the State's case-in-chief. In response, the State contends that the parties

---

[5]The court also imposed concurrent sentences for the use of a handgun in the commission of a crime of violence and possession of cocaine convictions.

3

stipulated to the disqualifying conviction and that there was no requirement that the stipulation be presented to the jury prior to the close of the State's case. Smith disagrees with both of these contentions. Certainly, if an element of the offense has not been established, then the conviction fails as a matter of law.

As we will relate, the trial court concluded that the parties had in fact agreed to stipulate that Smith had been convicted of a disqualifying crime. We will review this finding for clear error. Whether the State was required to present the stipulation to the jury prior to the close of its case is a question of law, which we review *de novo.*

**1.2. The Use of Stipulations in Prosecutions for Illegal Possession of Firearms**

In pertinent part, § 5–133 of the Public Safety Article makes it illegal for persons convicted of certain crimes to possess a firearm. *Hicks v. State*, 189 Md. App. 112, 134 (2009). In order to secure a conviction for violating PS §§ 5-133(b)(1), (c)(i), or (c)(ii), the State must establish that the handgun involved was a regulated firearm, that the defendant possessed this firearm, and that he was precluded from doing so because of a disqualifying status, in this case certain prior convictions. *See Nash v. State*, 191 Md. App. 386, 394, *cert. denied*, 415 Md. 42 (2010).

Where, as in the case before us, an element of the illegal possession charge is a predicate prior conviction, a prosecutor has the opportunity "to introduce evidence of the sort generally explicitly forbidden by the propensity rule, and to do it in circumstances where the element of predicate felon status is uncontestable and uncontested by the

4

defendant." D. Michael Risinger, *John Henry Wigmore, Johnny Lynn Old Chief, and "Legitimate Moral Force,"* 49 HAST. L.J. 403, 420 (1998). The prejudical effect of such evidence can be very serious. One way of avoiding, or at least minimizing, these effects is for the parties to stipulate that the defendant has been convicted of a disqualifying offense. In *Old Chief v. United States*, 519 U.S. 172, 185 (1997), the Supreme Court held that a trial court abused its discretion by refusing to accept a defendant's stipulation to the existence of a prior disqualifying conviction in a felon-in-possession case.

The Court of Appeals adopted the approach sanctioned by *Old Chief* in *Carter v. State*, 374 Md. 693, 722 (2003), explaining that "when a defendant admits or the parties stipulate to the previous-conviction element of a charge under [the predecessor to PS § 5-133], the trial judge should inform the jury that the defendant admits that he or she has been convicted of a [disqualifying] crime[.]" The *Carter* Court went slightly further, deciding that fewer details should be disclosed, and stated that "the name or nature of a previous conviction must always be withheld from the jury in a felon-in-possession case in which the defendant offered to stipulate or admit to that previous conviction." *Carter*, 374 Md. at 720 n.8.

### 1.3. What happened at trial

Prior to jury selection, the parties and the trial court discussed the manner by which Smith's disqualifying convictions should be addressed (emphasis added):

> [DEFENSE COUNSEL]: The appropriate method is for the State to provide certified conviction that, in fact, he is a felon, *which I would stipulate*.

5

THE COURT:   Okay.  And if that's the case, then I have not received any sort of certification from the State.

[PROSECUTOR]:   We normally don't give certifications.  We show them in court, but I don't have --

[DEFENSE COUNSEL]:   Typically I have received it in discovery from other prosecutors and in other counties, including this county, but I've not received it from [the prosecutor].  And so the appropriate method pursuant to the Court of Special Appeals is that . . . bifurcation is not the appropriate method.[6]

* * * *

THE COURT:   [B]ifurcation [is] not appropriate, okay.  *We'll deal with that when [we] come to it.*

[DEFENSE COUNSEL]*:   Thank you, Your Honor.  Whatever [the prosecutor] prefers.*

---

[6] A reference to *Nash v. State*, 191 Md. App. at 402–02. In that case, the parties agreed that the question of whether there was a disqualifying prior conviction would be submitted to the trial court, as opposed to the jury. We stated:

[T]he jury was not advised that appellant was charged with possession of a firearm due to his prior conviction of a crime that prohibited him from possessing a firearm. No evidence or stipulation regarding the prior conviction was presented to the jury. Thus, whether the stipulation was that the court would determine the prior conviction element or that the parties stipulated to the fact of the prior conviction, the trial proceeded as a bifurcated trial, with the jury considering only the issue of possession.
****
[W]e hold that bifurcation of the elements of the offense of possession of a regulated firearm by a person previously convicted of a crime of violence is improper, even if agreed to by the parties. The court here erred in proceeding in this fashion.

*Id.*

6

The prosecutor did not address the issue of Smith's disqualifying conviction during the State's case. After the State closed, Smith moved for judgments of acquittal. As to counts 5, 6, and 7, that is, the counts that charged Smith with knowingly possessing a firearm after conviction of a disqualifying crime, defense counsel asserted that "there is no evidence that my client did knowingly participate in the illegal possession of a regulated firearm, no evidence has been generated as to Count 5, 6 and 7."

Following argument, the trial court remarked (emphasis added):

> THE COURT:   As to Count 6, a firearm, possession after a felony conviction we talked about this yesterday. *We decided it was not going to be a bifurcated thing, but a stipulation with regard to the felony convictions.  Is that your recollection, [defense counsel]?*
>
> [DEFENSE COUNSEL]:  *Yes, sir.*
>
> THE COURT:   With that stipulation let me move on . . . .

The discussion turned to the question of proving Smith's status, namely, that he was disqualified from possessing a firearm:

> [DEFENSE COUNSEL]:   Your Honor, I would just like to put on the record that certainly as it relates to yesterday, when the comment came up as to bifurcation on Counts 5, 6 and 7, I did say certainly those are things that we would stipulate to. However, the stipulation has to be introduced into evidence before the State closes their case.  The State did not use that stipulation at the close of the State's.  If that had been done, it would have been without any objection from the defense because that's what I agreed to . . . . [T]hough we may agree of, yes, we will stipulate, the stipulation still has to be put on the record and presented in the body of the State's case and is that the only reason why I'm making that motion at this time as it relates to Counts 5, 6, and 7.  Thank you, Your Honor.

* * *

7

In response, the prosecutor asked permission to reopen its case-in-chief so that "we could put the stipulation on the record."[7] Defense counsel objected to this as well.

After a brief recess, and outside of the jury's presence, the trial court stated:

> During the break I wanted to research just a little about whether or not the State could reopen its case at this juncture, and then I took a look at my notes and I have in my notes that on the record in the discussion yesterday about whether we bifurcate[,] the defendant stipulated to [the] prior conviction. . . . But again, my notes show yesterday that that

---

[7]The trial court had the authority to grant the State's request to reopen its case. Md. Rule 5-611(a) states:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

In *Wisneski v. State*, 169 Md. App. 527, 553–55 (2006), *aff'd*, 398 Md. 578 (2007), we held that the trial court did not abuse its discretion in permitting the State to re-open its case to allow the court to read a stipulation to the jury regarding the defendant's prior conviction for a disqualifying offense. In reaching this result, we set out the applicable standard:

> The critical issue in determining whether a court abused its discretion in reopening the case is whether its doing so impaired the ability of the defendant to answer and otherwise receive a fair trial.
>
> Usually, whether the reopening of evidence impaired the defendant's ability to receive a fair trial is answered by reference to the State's intention in withholding the evidence, i.e., whether it did so in order to gain an unfair advantage from the impact later use of the evidence likely would have on the trier of facts, the nature of the evidence, and its relationship to evidence already in the case.

*Id.* at 554 (quoting *Cason v. State*, 140 Md. App. 379, 391 (2001)) (quotation marks and internal citations omitted).

stipulation was made on the record.

The State then inquired as to how the stipulation would be entered into the record. Defense counsel responded that "I would not object to the stipulation being that Mr. Nathaniel Smith, Senior, by law, is not permitted to possess a firearm." After the jurors returned, the trial court did not expressly indicate whether it granted or denied the State's motion to re-open its case. Instead, the court informed the jury that:

> During the break we have a stipulation for you. And that stipulation is that the parties agree the State and the defense agree that by law Mr. Nathaniel Smith is prohibited from possessing a firearm.

The defense did not object and then rested its case. The trial court and parties then discussed jury instructions. The trial court indicated that it intended to "mention the stipulations" during its instructions. Neither party objected and, in the course of its instructions, the court referred to the stipulation and told the jury that "it should be considered proven . . . [that] the defendant, Mr. Smith, is prohibited by law from possessing a regulated firearm." Defense counsel objected to this instruction.

### 1.4. Appellant's Contentions

Smith first asserts that he never agreed to stipulate to his prior conviction. He states:

> Certainly, when a defendant stipulates to the prior conviction element of the offense, the judge should inform the jury that the defendant admits that he has been convicted of a [disqualifying] crime . . . . The problem here is that there did not appear to be a final agreement to stipulate nor a recitation of a stipulation read into the record in the State's case in chief. When the trial court was alerted to this fact, it concluded, in error, that the defense had

9

stipulated to the prior conviction on the previous day. Review of the transcriptions of the trial reveals that the court was mistaken.

We read the record differently. Without belaboring the point, we believe that the transcript is clear that defense counsel expressly agreed to stipulate to the existence of Smith's prior disqualifying conviction; indeed, defense counsel's offer to stipulate triggered the initial discussion between the court and counsel. Moreover, defense counsel's statement that he would be satisfied with "whatever"—within reason, presumably—the prosecutor wanted in terms of the wording and presentation of the stipulation, hardly suggests that Smith was withholding approval until the parties agreed upon specific wording of the stipulation. The trial court's finding that Smith had agreed to the stipulation is not clearly erroneous.

Second, we turn to Smith's argument that the State's failure to introduce the stipulation before the close of its case undermines the sufficiency of his convictions for illegal possession of a regulated firearm. Without evidence as to the form of the stipulation in the prosecution's case-in-chief, his theory goes, the status element for these offenses is not satisfied. Neither this Court nor the Court of Appeals appears to have addressed this precise issue. However, appellate courts in other jurisdictions have considered Smith's contention, and variations on it, on several occasions.

A representative decision is *United States v. Harrison*, 204 F.3d 236 (D.C. Cir.), *cert. denied*, 531 U.S. 911 (2000), an unlawful possession of a firearm case. At trial, Harrison stipulated to the two elements of the offense, including his status as a prior

offender, but the stipulations were not formally read to the jury. Nor did the government offer any other evidence on those elements. 204 F.3d at 237-38.

The jury convicted Harrison, and he appealed, seeking to overturn his conviction as unsupported by the evidence – specifically emphasizing that two crucial elements for a felon-in-possession conviction were absent, notwithstanding the parties' stipulations.

Rejecting Harrison's challenge to the conviction, the United States Court of Appeals for the District of Columbia Circuit held "that Harrison has, by stipulating, waived any right to contest the absence of proof on the stipulated elements." *Id*. at 240. The court explained:

> The premise of the waiver theory is simple: Upon entering into a stipulation on an element, a defendant waives his right to put the government to its proof of that element. A stipulation constitutes an express waiver made . . . preparatory to trial by the party or his attorney conceding for the purposes of trial the truth of some alleged fact . . . thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it . . . .
>
> It is well settled that a defendant, by entering into a stipulation, waives his right to assert the government's duty to present evidence to the jury on the stipulated element. The only possible point of contention is whether a defendant can contest the government's failure to read the stipulation itself to the trier of fact. We conclude that a defendant cannot.

*Id.* (citations, internal quotation and punctuation marks omitted). The Court concluded:

> We conclude that there is little to be gained from holding that a stipulation, which unarguably waives a defendant's right to require the government to produce any evidence regarding that stipulation, nevertheless fails to waive the defendant's right to require that stipulation to be read to the jury. Surely, the government's failure formally to read stipulations is not "wise trial practice." . . . . However, nothing in either law or logic

11

compels us to reverse a conviction when the defendant enters into a stipulation on an element and then seeks a windfall from the government's failure to formally read the stipulation to the jury.

*Id*. at 242 (citations omitted).

In *United States v. Hardin*, 139 F.3d 813 (11th Cir.), *cert. denied*, 525 U.S. 898 (1998), another felon-in-possession case, Hardin and the government entered into a written stipulation that he had a prior conviction. Neither party filed the stipulation with the clerk before trial. Defense counsel told prospective jurors about Hardin's status, the district court mentioned this status during the preliminary jury instructions, the prosecutor, without objection, told the jurors that the felon status was not an issue, and defense counsel acknowledged this during her opening statement. 139 F.3d at 814. The prosecution "did not read, publish or otherwise offer the stipulation into evidence[,]" and Hardin's felon status did not come up again until a brief reference during the government's summation. *Id*.

On appeal from his conviction, Hardin maintained that the government's failure to offer the stipulation into evidence undermined his conviction. The Eleventh Circuit disagreed and concluded:

> In holding that Hardin's stipulation eliminated the government's burden to produce evidence of his felon status, we in no way imply that failing to offer a stipulation into evidence is wise trial practice. It is fair to assume that, in this case, the government had every intention of offering the stipulation for admission as evidence. . . . . Hardin, however, has no legal or equitable basis to contest the government's mistake. He received his benefit of the bargain-prejudicial information about his prior conviction never entered into the jury's deliberations.

12

*Id.* at 817 (citations omitted). Other courts have reached the same conclusion on similar facts. *See United States v. Ayoub*, 498 F.3d 532, 545-47 (6th Cir. 2007), *cert. denied*, 555 U.S. 830 (2008); *United States v. Smith*, 472 F.3d 752, 753 (10th Cir. 2006); *United States v. Muse*, 83 F.3d 672, 678–79 (4th Cir.), *cert. denied*, 519 U.S. 904 (1996) (dicta); *State v. Wolf*, 139 P.3d 414, 418 (Wash. App. 2006), *rev. denied*, 161 P.3d 1028 (Wash. 2007).

The reasoning reflected in these decisions is both sensible and fair. We hold that, by consenting to a stipulation, Smith relieved the State of its obligation to prove that he had previously been convicted of a disqualifying crime as part of its case-in-chief. We conclude, as did the *Hardin* Court, that Smith received exactly what he bargained for when he agreed to the stipulation and suffered no prejudice when the stipulation was presented to the jury by the court instead of by the prosecutor during the State's case-in-chief.

## 2. An Improper Rebuttal Argument?

In the State's rebuttal argument, the prosecutor twice characterized Smith's case as consisting of "smoke and mirrors." Smith asserts that these statements constituted "repeated improper and prejudicial statements denigrating defense counsel and his role at trial." Acknowledging that he did not object to these statements, Smith urges that the trial court's lapse in correcting what he characterizes as an egregious closing argument constituted plain error and asks us to reverse his convictions. However, non-error does

not constitute plain error.

Smith is correct that a prosecutor may not impugn the ethics or professionalism of defense counsel in closing argument. When prosecutors cross the line, and defense counsel objects, trial courts should do something about it. *See Reidy v. State*, 8 Md. App. 169, 172-79 (1969). But contrary to Smith's assertions, the State's closing argument was not improper—the "smoke and mirrors" comments were clearly directed to defense counsel's argument and did not impute impropriety or unprofessional conduct to defense counsel. Smith's claims of error and unfair prejudice are without basis.

**THE JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY ARE AFFIRMED. APPELLANT TO PAY COSTS.**